IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| MARK A. AVILA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 18-00390-ACK-RT |
| | ) |
| SHEET METAL WORKERS LOCAL UNION | ) |
| NO. 293, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS**

Plaintiff Mark Avila argues that Defendant Sheet Metal Workers Local Union No. 293 ("Local 293") has violated his rights under Title I, Section 101 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 (Section 101), by refusing to allow him to execute a collective bargaining agreement ("CBA") on behalf of his Hawaii business. Plaintiff argues that Local 293's refusal has effectively precluded him from exercising his "right to transfer" his union membership between local affiliates. Local 293 has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), 12(b)(6) (failure to state a claim), and 12(b)(7) (failure to join an indispensable party).

- 1 -

# BACKGROUND

## I.   Factual Background

### a. Plaintiff's Union Membership

According to the First Amended Complaint ("FAC"), ECF No. 20, Plaintiff is the sole director, officer, and shareholder of a California profit corporation, Bayarea Balancing & Cleanrooms, Inc., ("BABC California"), and he holds the same positions with a Hawaii profit corporation with the same name, Bayarea Balancing & Cleanrooms, Inc. ("BABC Hawaii").  FAC ¶¶ 18-19.  Plaintiff is currently an owner-member of Sheet Metal Workers Local Union No. 104 ("Local 104"), a local union affiliated with the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART") with jurisdiction over California.  FAC ¶ 24.  Defendant Local 293 is a local union also affiliated with SMART, with jurisdiction over Hawaii. FAC ¶ 2.  Local affiliates of SMART are governed by SMART's Constitution and Ritual (the "SMART Constitution").  See FAC ¶¶ 22-23; see also Ex. B., Mot. Dismiss; Ex. A, Reply Br.

### b. Plaintiff's Attempt to Transfer Membership

Plaintiff seeks to transfer his owner-membership status from Local 104 to Local 293.  FAC ¶ 27.  He alleges that the SMART Constitution "allows members to transfer their union membership to another local union by applying for a transfer card," FAC ¶ 25, but that he has been unable to exercise his

right to transfer because Local 293 has declined to allow him to execute its CBA, FAC ¶ 59.

In or around January 2017, Plaintiff notified Local 104 of his desire to transfer his membership. FAC ¶ 27. Local 104 issued a transfer card to Plaintiff, which, according to SMART's Constitution, would be "null and void unless deposited within 30 days from the date of issue." FAC ¶ 29. Plaintiff presented the transfer card to Local 293 and, "[a]pproximately two weeks later, an employee or officer of Local 293 asked [Plaintiff] to come to Local 293's offices to execute Local 293's [CBA] on behalf of BABC." FAC ¶ 30-31. Plaintiff executed the CBA but was not provided with an executed copy.[1] FAC ¶¶ 32-33. When Plaintiff later returned to tender his union dues, Local 293 advised him that it could not accept the dues because of "an ongoing investigation, which had been referred to Local 293's attorney." FAC ¶ 34.

On or about March 23, 2017, Local 293 sent a letter to Plaintiff advising that it had inquired with "the International Representative" of SMART; that the International Representative was "in discussions with [SMART's] General-Secretary about the matter"; and that Plaintiff would soon be notified "whether special approval is required by the General President of the

---

[1] The Court understands from representations made by the parties at the hearing that Plaintiff executed the CBA on behalf of BABC California, not BABC Hawaii.

International Association" to effectuate the transfer.  FAC ¶
35.  According to the letter, "an attempt to transfer as an
owner member is quite uncommon," which led Local 293 to inquire
with SMART for guidance on how to proceed.  FAC ¶ 35.  Local 293
also informed Plaintiff of a "pending grievance" and
"outstanding financial obligations" with Local 104, which
precluded transfer of his membership.  FAC ¶ 36.

When Plaintiff eventually resolved his outstanding
financial obligations and requested a new transfer card from
Local 104, he was advised by Local 104's Secretary/Treasurer
that he had to comply with certain conditions to receive a
transfer card:

1. "[T]he owner-member provides proof of a signed
   Collective Bargaining Agreement with the SMART local
   union within the desired transfer area."
2. "The owner-member provides proof that he or she has
   permanently relocated to the jurisdiction for which the
   transfer card is issued."

FAC ¶¶ 38-40 (the "Transfer Conditions").  Plaintiff, through
his attorney, pushed back on those Transfer Conditions, arguing
that they violate SMART's Constitution.  FAC ¶ 41.  In response,
Local 104's counsel advised that this interpretation of the
SMART Constitution "is the International Union's interpretation,
not Local 104's interpretation."  FAC ¶ 42.

On February 14, 2018, Plaintiff sent a letter and accompanying affidavit to SMART appealing Local 104's decision to condition a transfer card on the identified Transfer Conditions.  FAC ¶ 43.  About one month later, SMART's General President, Joseph Sellers, Jr., denied Plaintiff's appeal.  FAC ¶ 45.  The General President advised that "a transfer card is available only to a member who intends to permanently relocate to another local union's jurisdiction" and that the sheet metal shop with which the member is connected must be "in signed agreement with the local union or local unions having jurisdiction over the shop."  FAC ¶ 46.

After receiving the denial letter from SMART, Plaintiff requested on April 5, 2018, that Local 293 allow him to execute Local 293's CBA on behalf of BABC Hawaii.  FAC ¶¶ 47-50.  Local 293 advised Plaintiff, about one week later, that it was "still investigating the matter in light of recent correspondence from the International."  FAC  ¶ 51.  Several months later, on December 28, 2018, Local 293 formally denied Plaintiff's request to execute the CBA, without having requested any additional information.  FAC ¶ 52-54.  Plaintiff alleges that Local 293's denial set forth "arbitrary, capricious, unreasonable, and pretextual bases in support of its decision not to allow Mr. Avila to execute the CBA."  FAC ¶ 55.  Plaintiff is apparently "ready, willing, and able to secure

permanent residency in Honolulu, Hawaii" and his final hurdle is

entering into the CBA with Local 293 on behalf of his business,

BABC Hawaii.  FAC ¶ 57-58.

### c. The SMART Constitution

Plaintiff's claims and allegations rely on several

provisions of the SMART Constitution.[2/]  First, the SMART

Constitution provides that, _inter alia_, no owner "shall be

eligible to make application for membership or be accepted as a

member of this Association or of any local union or counsel

thereof . . . ."  SMART Const., Art. 16 § 1(c).  The SMART

Constitution carves out an exception for "owner-members" in

Section 1(d):

> An owner, employer, contractor, jobber, or
> anyone who otherwise participates as
> management in the sheet metal industry shall
> be eligible to retain or apply for membership
> in this International Association or any local
> union thereof as an owner-member with the same
> rights and duties as other members except as
> provided below:
>      (1).  The sheet metal shop or business
> with which he or she is connected is in signed
> agreement with the local union or local unions

---

[2/]  The Court considers the portions of the SMART Constitution attached
to Local 293's Motion to Dismiss under the "incorporation by reference"
doctrine.  _See_ discussion _infra_; _United States v. Ritchie_, 342 F.3d 903, 907-
08 (9th Cir. 2003) (citations omitted).  A document may be incorporated by
reference if (1) "the plaintiff refers extensively to the document," or (2)
"the document forms the basis of the plaintiff's claim."  _Id._ at 908
(citations omitted).  Because Plaintiff referred extensively to the SMART
Constitution in his FAC and at the hearing, and because it largely forms the
basis for Plaintiff's claim, the Court will treat the document as part of the
FAC, even though Local 293 offered the select provisions of the document.
_See id._; _see also_ _Leimbach v. Haw. Pac. Health_, No. 14-00246 JMS-RLP, 2015 WL
4488384, at *1 (D. Haw. July 22, 2015) (holding that complaint's "extensive
reference" to medical records justified court treating them as part of
complaint).

having jurisdiction over the shop and the shop or business must employ at least one journeyman sheet metal worker who is a member of this Association.

(2). An owner-member shall not be entitled to attend any meetings or be permitted to vote for election of local union officers or on any question pertaining to wages, hours, benefits, or other terms or conditions of employment or on the acceptance or rejection of a collective bargaining agreement, and further, shall not be permitted to serve in a representative capacity or hold any office or position in the local union. An owner-member who returns to any classification represented by this Association shall not be permitted to run for local union office in any local union affiliated with SMART for a period of one (1) year. Such period starts from the date that his or her classification is changed on an official dues receipt issued by the financial secretary-treasurer of the local union.

(3). An owner-member shall not be permitted to work in any capacity in the sheet metal industry for another employer.

(4). Any owner-member who fails to fulfill his or her financial obligations by making proper payment to his or her employees for work performed or to contribute the contractual obligations to fringe benefit funds shall be subject to charges and penalties as prescribed in Article Seventeen (17) of this Constitution.

(5). Any owner-member working with the tools of the trade shall pay to all fringe benefit programs for the actual hours worked in accordance with the respective collective bargaining agreement, unless that collective bargaining agreement provides for a different requirement.

(6). Nothing herein shall be construed to confer eligibility for benefits to an owner-member from any particular employee or fringe benefit plan, nor supersede any minimum hours or participation requirements of such plans.

Id. § 1(d); see also FAC ¶ 26 (quoting a portion of this section).

Section 9 of Article 16 addresses "transfer cards." The Court will not quote all the provisions governing transfers of membership, but the SMART Constitution generally provides that "[a]ny good standing member of an affiliated local union who desires to transfer or accept employment in the jurisdiction of another local union, in the event such employment involves a transfer of permanent address, shall apply to the financial secretary-treasurer of his local union for an official transfer card." SMART Const., Art. 16 § 9(a). Members are not entitled to a transfer card if charges are pending against them, and not until "all duties and all obligations, financial and otherwise, in connection with said charges or trial have been fully discharged." Id. § 9(b). Members also must be current on their local union and SMART dues. Id. § 9(c).

The SMART Constitution provides that a local union "is obligated to issue official transfer cards to good standing members in the manner specified in the Constitution without action or approval of the members of the local union." SMART Const., Art. 16 § 9(d). And, when "properly issued and presented for deposit with proper identification," the transfer card of any "good standing member . . . shall be accepted by any

local union in accordance with this Constitution," except in certain circumstances where strikes and other disputes are pending or unsettled. See id. § 9(n). Finally, "a good standing member shall obtain a transfer card in order to work within the jurisdiction of another local union in the event he or she changes his permanent residence to a location within the territorial jurisdiction of the local union in which he or she intends to perform work." Id. § 9(s).

### d. Internal Union Appeals

SMART's Constitution requires union members to appeal first to the General President, then to the General Executive Council, and then to the General Convention. SMART Const., Art. 19; see also FAC ¶¶ 6, 15. Plaintiff alleges in the FAC that he has satisfied the administrative perquisites to a claim under Section 101. See FAC ¶¶ 6-17. The dates and order of events is somewhat difficult to discern from the organization of the FAC; the Court does its best to accurately convey them here:

*The First Appeal*. Plaintiff submitted an appeal to SMART's General Secretary-Treasurer on May 9, 2018, after Local 293 first denied Plaintiff's request to execute Local 293's CBA (the "First Appeal"). FAC ¶ 6. Local 293 submitted an answer to the First Appeal on June 5, 2018. FAC ¶ 7. Plaintiff's appeal was denied on November 14, 2018. FAC ¶ 8. Plaintiff appealed once more to SMART's General Executive Council on

January 9, 2019.  FAC ¶ 9.  Local 293 submitted its answer on
March 4, 2019.  FAC ¶ 12.  At the time the FAC was filed,
SMART's General executive Council had not rendered a decision as
to the First Appeal.  FAC ¶ 13.

*The Second Appeal*.  At the same time, Plaintiff had
also appealed Local 293's formal letter denying Plaintiff's
request to execute the CBA, dated December 28, 2018 (the "Second
Appeal"), to SMART's General President.  FAC ¶¶ 10, 52–54.
Local 293 submitted its answer to the Second Appeal on February
19, 2019.  FAC ¶ 11.  Like the First Appeal, SMART's General
President had not rendered a decision on the Second Appeal at
the time the FAC was filed.  FAC ¶ 14.

Plaintiff alleges that "SMART officials are hostile to
Mr. Avila, and Mr. Avila cannot hope to obtain a fair hearing on
his claim."  FAC ¶ 16.  The FAC states that "[f]ull exhaustion
of [Plaintiff's] internal union remedies would unreasonably
delay [his] opportunity to obtain a judicial hearing on the
merits of his claim."  FAC ¶ 17.  The FAC emphasizes the First
and Second Appeals, which began in May 2018 and are still
pending before the General Convention.  FAC ¶ 17.  According to
the FAC, the General Convention meets in August 2019 and
Plaintiff "will be unable to fully exhaust internal union
remedies until SMART's General Convention meets in 2024, as

SMART's Constitution states that SMART 'shall meet in a regular quinquennial (5-year) SMART General Convention.'"  FAC ¶ 17.[3]

## II.  Procedural Background

The FAC alleges one cause of action against Local 293 under 29 U.S.C. § 411(a)(1):

> Every member of a labor organization shall
> have equal rights and privileges within such
> organization to nominate candidates, to vote
> in elections or referendums of the labor
> organization, to attend membership meetings,
> and to participate in the deliberations and
> voting upon the business of such meetings,
> subject to reasonable rules and regulations in
> such organization's constitution and bylaws.

FAC ¶ 62 (quoting 29 U.S.C. § 411(a)(1)).

Plaintiff's theory of liability is that Local 293 has, by its refusal to sign the CBA, effectively precluded Plaintiff from exercising his owner-member "right to transfer" his membership between local unions.  FAC ¶ 59; see also FAC ¶ 64 ("Local 293 has denied Mr. Avila equal rights and privileges under SMART's Constitution by arbitrarily, capriciously, and unreasonably refusing to allow Mr. Avila to execute its CBA, and by relying on pretextual reasons for such refusal, thereby preventing Mr. Avila from obtaining a transfer card from Local

---

[3]  The FAC also asserts that Plaintiff commenced his first appeal on February 14, 2018, and that the appeal is still pending before SMART's General Convention.  This is misleading, and irrelevant, because the very first union appeal Plaintiff is referring to involved Local 104's decision not to issue a transfer card, not Local 293's decision not to enter into the CBA with BABC, which is at issue in this lawsuit.

104 and interfering with his rights under Article 16, Section 9 of SMART's Constitution."). He alleges that, "[a]s a result of Local 293's refusal to allow Mr. Avila to execute its CBA on behalf of BABC Hawaii, Local 293 is denying Mr. Avila each of the equal rights and privileges afforded to members of Local 293 under 29 U.S.C. § 411(a)(1)." FAC ¶ 66. On this basis, Plaintiff seeks injunctive relief to force Local 293 to execute the CBA with BABC Hawaii so that Plaintiff may effectuate the transfer between local affiliates. FAC ¶¶ 68-69.

Defendant Local 293 has filed a motion to dismiss the FAC, alleging that (1) the district court lacks subject matter jurisdiction, (2) the complaint fails to state a claim under the LMRDA, (3) Plaintiff failed to join an indispensable party (SMART), and (4) declaratory relief is not warranted. See Mot. Dismiss, ECF No. 24-1. The Motion to Dismiss attaches twelve exhibits and the Reply brief attaches one, none of which were attached to the FAC. See Exs. A-L, Mot. Dismiss, ECF No. 24; Ex. A, Reply Br., ECF No. 29; see also FAC.

Local 293 filed its opening brief on March 29, 2019. ECF No. 24. Plaintiff filed his opposition brief on July 23, ECF No. 28, and Local 293 filed a reply brief on July 29. A hearing was held on August 13, 2019, at 11:00 a.m.

<u>**STANDARDS**</u>

**I.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A defendant may challenge a court's subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1).  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."  <u>See</u> <u>Thompson v. McCombe</u>, 99 F.3d 352, 353 (9th Cir. 1996).

A challenge to a court's subject matter jurisdiction may be either "facial" or "factual."  <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).  In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  <u>Id.</u> (quoting <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004)). When opposing a facial attack on subject matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings.  <u>Id.</u>; <u>see</u> <u>Doe v. Holy See</u>, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint).  In deciding a facial Rule 12(b)(1) motion, the court must assume the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor.  <u>Wolfe</u>, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. (quoting Safe Air, 373 F.3d at 1039). The moving party may bring a factual challenge to the court's subject matter jurisdiction by submitting affidavits or any other evidence properly before the court. Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009). The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject-matter jurisdiction." Id. (citation omitted). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n.2 (9th Cir. 2009). When deciding a factual challenge to the court's subject matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." Id.

## II. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2).  The Court may dismiss a complaint either because it
lacks a cognizable legal theory or because it lacks sufficient
factual allegations to support a cognizable legal theory.
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
1988).

In resolving a Rule 12(b)(6) motion, the Court must
accept all well-pleaded factual allegations as true and construe
them in the light most favorable to the plaintiff.  Sateriale v.
R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).
The complaint "must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its
face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Mere
conclusory statements in a complaint or "formulaic recitation[s]
of the elements of a cause of action" are not sufficient.
Twombly, 550 U.S. at 555, 129 S.Ct. 1955.  Thus, the Court
discounts conclusory statements, which are not entitled to a
presumption of truth, before determining whether a claim is
plausible.  Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.  However,
"[d]ismissal with prejudice and without leave to amend is not
appropriate unless it is clear . . . that the complaint could
not be saved by amendment."  Harris v. Cty. of Orange, 682 F.3d
1126, 1131 (9th Cir. 2012) (citation omitted).

## DISCUSSION

### I.   Scope of Materials Considered

The Court first addresses a preliminary matter involving the parties' disagreement about what evidence the Court may consider in deciding Local 293's Motion to Dismiss.

As stated, Local 293 attaches twelve exhibits to its Motion to Dismiss and one exhibit to its Reply Brief.  See Exs. A-L, Mot. Dismiss; Ex. A, Reply Br.  It argues that a motion under Rule 12(b)(1) for lack of subject matter jurisdiction permits the moving party to submit evidence outside the pleadings and places the burden on the nonmoving party to present evidence in opposition, similar to a motion for summary judgment.  Mot. Dismiss 12; see also Reply Br. 15 (citing Haw. Stevedores, Inc. v. HT&T, Co., 363 F. Supp. 2d 1253, 1261 (D. Haw. 2005)).  Plaintiff counters that Local 293's arguments are not actually jurisdictional such to allow the Court to review extrinsic materials.  Opp. Br. 29-31.  Plaintiff asks the Court to either "exclude these additional facts and documents or treat the Motion as one for summary judgment."  Opp. Br. 30.

As discussed supra, Local 293 is correct that a defendant may factually attack jurisdiction by submitting evidence outside the pleadings.  Wolfe, 392 F.3d at 361.  The problem here is that not all of Local 293's arguments are actually jurisdictional, despite them being framed as such.  In

challenging jurisdiction, Local 293 argues that (1) Plaintiff is not the real party in interest under Rule 17; (2) Plaintiff is not entitled to protections under the LMRDA; and (3) Plaintiff has failed to exhaust his internal union remedies. Mot. Dismiss 14-24. The first and third arguments addressing "real party in interest" and exhaustion of union remedies do not implicate jurisdiction at all. See Bise v. Int'l Broth. of Elec. Workers, AFL-CIO Local 1969, 618 F.2d 1299, 1303 n.2 (9th Cir. 1979) (holding that exhaustion is not "a jurisdictional bar or absolute waiver to judicial review"); Marshall Bank v. Twelve Oaks Partners, LLC, No. CV 10-212 AG(OPx), 2011 WL 13223920, at *3 (C.D. Cal. June 21, 2011) (collecting cases and explaining that the "right to object to a plaintiff under Rule 17(a) is not jurisdictional").

So any outside evidence would have to be viewed in a vacuum. The Court could only consider the evidence to decide Local 293's sole jurisdictional argument: that Plaintiff is not a member with protected rights under the LMRDA. As further explained infra, the Court will treat Local 293's jurisdictional challenge here as facial, not factual. Therefore, the Court is limited to considering the allegations in the FAC to decide whether Plaintiff's allegations adequately plead jurisdiction.

An alternative avenue to considering Local 293's extrinsic materials more broadly would be to convert the Motion

to Dismiss to a motion for summary judgment. See Fed. R. Civ. P. 12(d). If the Court were to convert the motion, it would have given the parties a "reasonable opportunity to present all the material that is pertinent to the motion." Id. The decision whether or not to convert a motion to dismiss to one for summary judgment is discretionary, Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Heath, 654 F.3d 919, 925 n.6 (9th Cir. 2011). Here, Plaintiff has not submitted any affidavits or evidence in response to Local 293's motion. And even the evidence submitted by Local 293 is incomplete.[4]

At the hearing, neither party meaningfully relied on the extrinsic materials attached to Local 293's Motion to Dismiss, with the exception of the SMART Constitution. Rather than delaying the proceedings to allow the parties to submit additional materials and briefs, the Court will decide Local 293's Motion as a motion to dismiss. The Court declines to convert the motion now and instead will consider only the face of the FAC and any documents properly incorporated by reference. Cf. Escalante v. City & Cty. of Honolulu, No. 17-00578 JMS-RLP, 2018 WL 1748110, at *2 n.4 (D. Haw. Apr. 11, 2018) (electing not to convert the motion to one for summary judgment and striking extrinsic exhibits).

---

[4] For example, the record does not include a full copy of the SMART Constitution. See Ex. B, Mot. Dismiss & Ex. A, Reply Br. (piecemeal sections of the SMART Constitution).

Further to that point, some of the documents—whether related to jurisdiction or not—may be properly considered by the Court under the "incorporation by reference" doctrine. The doctrine allows the court to consider documents that, even if not physically attached to the complaint, are "referenced extensively in the complaint and [are] accepted by all parties as authentic." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). The doctrine only applies where "the complaint necessarily relies upon a document or the contents of the document are alleged in the complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." Coto, 593 F.3d at 1038 (citing United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003)).

Applying this framework here, the Court will treat the portions of the SMART Constitution attached to the Motion to Dismiss as incorporated by reference into the FAC. See infra n.2. As to the other documents that Local 293 submitted, the Court declines to consider them in connection with the Motion now before the Court. Much of these remaining extrinsic materials are letters documenting Plaintiff's internal union

appeals. And, to the extent that these letters are referenced in the FAC at all, they are only mentioned in passing or to plead exhaustion.[5] Any documents that would otherwise be subject to judicial notice are not relevant to today's decision, so the Court did not consider them.[6]

To summarize, in deciding Local 293's Motion to Dismiss, the Court will only consider the SMART Constitution. The remaining materials are excluded.

## II. Subject Matter Jurisdiction

### a. Local 293's Jurisdictional Challenge

Local 293 purports to raise both a facial and a factual challenge to subject matter jurisdiction. In support of its factual challenge, Local 293 attaches several documents. It relies on this extrinsic evidence to support SMART's interpretation of the SMART Constitution and to argue that

---

[5] Portions of the March 20, 2018 letter from SMART to Plaintiff, attached as Exhibit C to the Motion to Dismiss, are discussed more than once in the FAC. See FAC ¶¶ 45-46, 49. Although the Court could incorporate it by reference on that basis, the Court has not relied on the contents of the letter in its decision, and many of the relevant facts are recounted in the FAC.

[6] The Court could take judicial notice of some documents submitted by Local 293, including, Exhibits A and L to the Motion to Dismiss, which are documents filed in connection with a lawsuit brought by Plaintiff in the Northern District of California for Case No. 18-cv-2148. See Harris, 682 F.3d at 1132 (holding that the court may take judicial notice of "matters of public record" without converting to a motion for summary judgment (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)). Likewise, Exhibits D and F of the Motion to Dismiss are charges issued by the National Labor Relations Board ("NLRB"), which may be judicially noticed as public records. See Ritchie, 342 F.3d at 909 (citing Interstate Nat'l Gas Co. v. S. Cal. Gas. Co., 209 F.2d 380, 385 (9th Cir. 1953)). The Court need not expressly notice these documents because it concludes that the documents do not impact the Court's decision.

Plaintiff's owner-member status affords him limited rights thereunder.

The Court reiterates that only one of Local 293's three "jurisdictional" arguments actually implicates jurisdiction. In analyzing jurisdiction, then, Local 293 asks the Court to decide that Plaintiff, as an "owner-member" of Local 104, is not entitled to protection under Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), especially in a claim against a local union other than Local 104. Mot. Dismiss 17-21. Therefore, Local 293 implies, jurisdiction does not exist under the LMRDA.[7/] See id.

Jurisdiction under the LMRDA for a Section 101 claim is grounded in Section 102 of the LMRDA, 29 U.S.C. § 412 ("Section 102"), which permits any person whose rights under Section 101 have been infringed to sue in district court.[8/] Local 293's position appears to be that there is no jurisdiction under Section 102 because Plaintiff is not a "member" such that

---

[7/] Local 293 also raised at the hearing Plaintiff's apparent reliance on jurisdiction under 29 U.S.C. § 185(a) of the LMRA. See FAC ¶ 4. Neither party discussed the relevance of the LMRA or § 185 in its brief(s). Because the sole cause of action in the FAC is Section 101 of the LMRDA, the Court addresses jurisdiction under Section 102 of the same statute, which Plaintiff also pleaded in the FAC. See FAC ¶ 4.

[8/] The full language of 29 U.S.C. § 412 is as follows: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

he can have rights under Section 101 infringed upon in the first place.[9/]

### b. Facial Versus Factual Attack on Jurisdiction

For three reasons, the Court declines to consider Local 293's factual challenge to jurisdiction and instead treats Local 293's argument as a "facial" attack.

First, Local 293's arguments challenging jurisdiction are primarily based on analysis of case law, facts pleaded in the FAC, and interpretations of the SMART Constitution.  See id. Local 293 does not meaningfully rely on any of the extrinsic evidence it submitted, other than the SMART Constitution.  In other words, the viability of Local 293's arguments do not depend on the Court's considering those extrinsic materials.

Second, the Ninth Circuit has held that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action."  Sun Valley Gasoline, Inc. v. Ernst Enters., 711 F.2d 138, 139 (9th Cir. 1983) (internal quotation

---

[9/] Because the LMRDA is not embodied in the National Labor Relations Act, the LMRDA provides a separate jurisdictional basis to the district court pursuant to Section 102 of the LMRDA.  See 29 U.S.C. § 412; see also Jones v. Fort Worth Stage Emps. Union Local 126, No. 18-10540, 2019 WL 3437637, at *1 (5th Cir. July 30, 2019) (unpublished) ("Jurisdiction over claims of violations of the LMRDA is vested in the district court, not the NLRB.").

marks omitted). Such is the case here, where Plaintiff's "right to recovery rests upon the interpretation of a federal statute that provides both the basis for the court's subject matter jurisdiction and the plaintiff's claim for relief." Willison Basin Interstate Pipeline Co. v. an Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1094 (9th Cir. 2008); see also Ono v. Dias, No. 14-00327-LEK-KSC, 2014 WL 4955696, at *3-6 (D. Haw. Sept. 30, 2014) (finding that jurisdiction and the merits of an action under the LMRDA were "intertwined" and dismissal for lack of jurisdiction would be "premature"); Sheen v. Screen Actors Guild, No. 12-01468 SJO(AJW), 2012 WL 2360923, at *4-5 (C.D. Cal. Mar. 28, 2012) (declining to address factual attack because "Defendants' evidence contests the veracity of Plaintiffs' allegations going to the heart of the merits of Plaintiffs' LMRDA and LMRA claims").

Third, and finally, Plaintiff has not submitted any of his own extrinsic evidence to develop the record. It appears to the Court that Plaintiff understandably mistook Local 293's argument about Plaintiff's membership status as relevant to the 12(b)(6) failure to state a claim under the LMRDA rather than the 12(b)(1) failure to allege jurisdiction under the LMRDA. See Opp. Br. 18 n. 1. With Local 293's mistaken categorization of certain issues as jurisdictional, it is no wonder that

Plaintiff did not treat the Motion as jurisdictional. And Plaintiff did not submit any documents, affidavits, or other evidence in response. The Court is not willing to consider any factual issues purportedly raised by Local 293's exhibits when the parties have not adequately developed the record. See Sheen, 2012 WL 2360923 at *4-5.

For the stated reasons, the Court will treat Local 293's 12(b)(1) Motion to Dismiss as a facial attack and will not address Local 293's factual attack at this time. In a facial attack, the Court must limit its analysis to the allegations of and documents attached to or incorporated by reference in the complaint. See Wolfe, 392 F.3d at 362; Canosa v. State of Haw., No. 05-00791 HG-LEK, 2007 WL 128849, at *3 (D. Haw. Jan. 11, 2007), adopted by 2007 WL 473679 (D. Haw. Feb. 8, 2007).

### c. Jurisdiction Under Section 102

Accepting Plaintiff's allegations in the FAC as true, the Court concludes that Plaintiff has adequately pleaded jurisdiction to survive a facial challenge under Rule 12(b)(1). At this early stage in the litigation, dismissal for lack of jurisdiction would be premature. See Ono, 2014 WL 4955696 at *3.

The Ninth Circuit has held that federal question jurisdiction is "not defeated by the possibility that the complaint might fail to state a claim upon which recovery can be

- 24 -

had." <u>Brock v. Writers Guild of Am., W., Inc.</u>, 762 F.2d 1349, 1352 n.3 (9th Cir. 1985). Where, as here, "a statute provides that basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief," jurisdiction may not be decided on a motion to dismiss unless the cause of action "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." <u>Sun Valley</u>, 711 F.2d at 139-40; <u>see also</u> <u>Brock</u>, 762 F.2d at 1352 n.3 ("[T]he failure to state a valid claim is not the equivalent of a lack of subject matter jurisdiction, and calls for a judgment on the merits rather than for a dismissal for lack of jurisdiction."); <u>Hughes v. Local No. 11 of Intern. Ass'n of Bridge, Structural and Ornamental Ironworkers, AFL-CIO</u>, 287 F.2d 810, 813-14 (3d Cir. 1961) (holding that a district court "has jurisdiction to determine the validity of any substantial claim asserted under the [Section 101] 'Bill of Rights' subchapter of the [LMRDA] even though it may determine ultimately that the claim is not one upon which relief may be granted").

Neither of those circumstances exist here. Plaintiff has generally alleged a violation of a federal statute, LMRDA Section 101(a)(1), over which this Court has jurisdiction:

> As a result of Local 293's refusal to allow
> Mr. Avila to execute its CBA on behalf of BABC
> Hawaii, Local 293 is denying Mr. Avila each of

> the equal rights and privileges afforded to
> members of Local 293 under 29 U.S.C. §
> 411(a)(1).

FAC ¶ 66.  That being the case, the Court will assume

jurisdiction to decide whether the FAC states a cause of action

upon which relief may be granted.  See Brock, 762 F.2d at 1352

n.3.  The Court therefore denies Local 293's facial challenge to

subject matter jurisdiction under 12(b)(1).

## III. Exhaustion of Internal Union Remedies

Having addressed Local 293's jurisdictional challenge,

the Court turns now to its exhaustion argument.  Local 293

contends that Plaintiff's claim should be dismissed for failure

to exhaust internal union remedies.  Section 101(a)(4) addresses

exhaustion under the LMRDA:

> No labor organization shall limit the right of
> any member thereof to institute an action in
> any court, or in a proceeding before any
> administrative agency, . . . [p]rovided,
> [t]hat any such member may be required to
> exhaust reasonable hearing procedures (but not
> to exceed a four-month lapse of time) within
> such organization, before instituting legal or
> administrative proceedings against such
> organizations or any officer thereof . . . .

29 U.S.C. § 411(a)(4) (emphasis added).  Exhaustion under the

LMRDA is permissive rather than mandatory.  See Casumpang v.

Int'l Longshoremen's & Warehousemen's Union, Local 142, 269 F.3d

1042, 1061-62 (9th Cir. 2001).  This Court has "broad discretion

to require, or not to require, exhaustion depending on the

reasonableness of such requirement in light of the facts of each case." Id. (citing <u>NLRB v. Indus. Union of Marine & Shipbuilding Workers</u>, 391 U.S. 418, 426, 88 S.Ct. 1717 (1968)). Courts in the Ninth Circuit consider three factors when deciding whether to require exhaustion:

> Whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . . ; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

<u>Id.</u> (quoting <u>Clayton v. Int'l Union, United Automobile, Aerospace & Agric. Implement Workers</u>, 451 U.S. 679, 101 S.Ct. 2088 (1981)).

In its Motion to Dismiss, Local 293 first attempts— unsuccessfully—to establish that failure to exhaust is "properly the subject of a motion to dismiss." Mot. Dismiss 21. Local 293 relies on <u>Ritza v. ILWU</u>, 837 F.2d 365 (9th Cir. 1988), which was overruled by the Ninth Circuit in 2014. See <u>Albino v. Baca</u>, 747 F.3d 1162, (9th Cir. 2014). In <u>Albino</u>, the Ninth Circuit held that a motion for summary judgment, not a Rule 12(b) motion, is the appropriate vehicle for addressing exhaustion of non-judicial remedies. <u>Id.</u> at 1169-71. Although the case addressed exhaustion under the Prison Litigation Reform Act, the

Court extended its holding to other contexts involving non-mandatory exhaustion as well. Id. at 1171 (citing, inter alia, Labor Management Relations Act ("LMRA") cases).

Albino provides the basic procedure for deciding non-mandatory exhaustion, "under which a party may move for summary judgment on the exhaustion question, followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion." Id.[10] Under the Albino framework, a dismissal under a 12(b)(6) motion is appropriate only "in those rare cases where a failure to exhaust is clear from the face of the complaint." Id.

Here, Plaintiff pleaded facts in the FAC relevant to exhaustion. See FAC ¶¶ 6-17. The FAC tracks the correspondence between Plaintiff and the various levels of appeals within SMART. Plaintiff sufficiently argues the relevant factors that inform this court's decision whether to require exhaustion. See FAC ¶¶ 16-17. The Court cannot, on this limited record, fully analyze the futility of further internal appeals and decide whether union officials are in fact hostile to Plaintiff. Cf. Blacher v. Buffaloe, No. CV 16-5016-GW (AGR), 2017 WL 10543654, at *3 (C.D. Cal. Aug. 25, 2017) (recommending denial of motion

---

[10] For the reasons discussed throughout this Order, the Court declines to convert Local 293's motion to dismiss to a motion for summary judgment. And because exhaustion is not jurisdictional, the Court again notes that its analysis is limited to the face of the FAC.

to dismiss because the "court requires a more complete record to determine whether exhaustion was available, whether the grievance process was a dead end for Plaintiff and whether Plaintiff failed to exhaust available remedies"), adopted by 2017 WL 10544618 (C.D. Cal. Oct. 10, 2017).  Accordingly, the Court cannot say that it is clear from the face of the FAC that Plaintiff failed to exhaust his internal remedies or that exhaustion is required in these circumstances.  All the Court can say is, based on the allegations as framed in the FAC, it is not clear that Plaintiff failed to exhaust his internal remedies pursuant to Section 102(a)(4) of the LMRDA.

The Court thus denies Local 293's Motion to Dismiss for failure to exhaust internal union remedies.

## IV.  Failure to state a claim under the LMRDA

The sole cause of action in the FAC alleges that Local 293's refusal to enter into a signed CBA with BABC Hawaii denies Plaintiff of his "right to transfer" his owner-membership under the SMART Constitution, in violation of Section 101(a)(1) of the LMRDA.  Local 293 moves to dismiss for failure to state a claim primarily on the grounds that (1) the LMRDA does not provide a right of action to non-members and Plaintiff has no membership affiliation with Defendant Local 293; (2) even if Plaintiff were considered to have "owner-member" status with Local 293, owner-members are not entitled to any of the four rights listed in

Section 101(a)(1); and (3) Section 101 does not protect the unenumerated "right to transfer." <u>See</u> Mot. Dismiss 24-26.  The Court agrees that the FAC, as currently framed, does not allege any violation of rights protected by Section 101(a)(1) of the LMRDA.

Section 101(a)(1) of the LMRDA provides the following:

> **(a)(1) Equal Rights**
> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

<u>Id.</u> § 411(a)(1).  The statute lists four "rights" that it protects:  (1) the right to nominate candidates, (2) the right to vote, (3) the right to attend meetings, and (4) the right to participate in such meetings.  <u>Id.</u>

Title I more generally is "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." <u>Local No. 82, Furniture & Piano Moving, Furniture Store Drivers v. Crowley</u>, 467 U.S. 526, 536-37, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).  Although it does not create substantive rights, Section 101 "requires <u>equal</u> . . . rights: it requires

- 30 -

that rights given to some members must be given to all, subject only to reasonable rules or regulations." Sergeant v. Inlandboatmen's Union of the Pac., 346 F.3d 1196, 1201 (9th Cir. 2003). In that sense, "Section 101(a)(1) is an anti-discrimination provision, pure and simple. To state a claim under section 101(a)(1), a union member must allege a denial of rights accorded to other members." Ackley v. W. Conference of Teamsters, 958 F.2d 1463, 1473 (9th Cir. 1992).

Here, Plaintiff has failed to allege facts sufficient to state a claim that Local 293 violated his equal rights under Section 101(a)(1). Plaintiff does not allege that Local 293 has discriminated against him or a particular class of members by denying "rights accorded to other members." See Sheen, 2012 WL 2360923 at *6; see also Stelling v. Int'l Broth. of Elec. Workers Local Union No. 1547, 587 F.2d 1379, 1384-85 (9th Cir. 1978) (holding that Section 101 depends on allegations of discrimination). At most, he alleges that Local 293's actions are blocking his ability to transfer and conduct work in Hawaii. Even viewed in the light most favorable to Plaintiff, the FAC cannot be construed as alleging discrimination. See Ayala v. Pac. Maritime Ass'n, No. 08-0119 TEH, 2008 WL 1886021, at *8-9 (N.D. Cal. Apr. 25, 2008) (granting motion to dismiss in part because plaintiffs alleged only that the defendant union blocked

the transfer of membership and violated seniority rights),
<u>partially abrogated on other procedural grounds</u>.

Even if Plaintiff had pleaded discrimination, he hangs his hat on a purported "right to transfer." Yet this is not a protected right under the LMRDA. And Plaintiff fails to point to any facts to support a plausible claim that he has been deprived of any of the enumerated rights in Section 101(a)(1). The plain language of the statute mandates only that the specifically-enumerated rights—the rights to nominate, vote, attend meetings, and participate in those meetings—must be equally afforded to all members. See 29 U.S.C. § 101(a)(1). The Third Circuit held as much in _Hughes_ when it analyzed the legislative history of the "equal rights" provision: "The present language, unlike that in the earlier proposals, does not permit a construction that would secure to members of labor organizations rights in addition to those specifically set forth." _Hughes_, 287 F.2d at 818 n.7.

Plaintiff's reliance on a "right to transfer" takes the language of Section 101 out of context. A district court in this circuit presented the issue well in _Ayala_ when addressing the plaintiff's argument that he had been deprived of his right to transfer and "seniority rights":

> But these are not rights protected by the
> LMRDA. The LMRDA does not provide equal rights
> to all union members in every context; it

> guarantees only that if the _enumerated_ rights
> are granted to some union members, they are
> granted to all. Plaintiffs cannot take the
> "equal rights and privileges" language of §
> 101(a)(1) out of context. They complain they
> were denied equal treatment in terms of the
> ability to get work as visitors and to
> transfer to Local 13. These are rights
> stemming from the [collective bargaining
> agreement], not the LMRDA. Accordingly, the
> Complaint, as it stands, does not state a
> claim under § 101 of the LMRDA.

_Ayala_, 2008 WL 1886021 at *9, partially abrogated on other

grounds.

Likely realizing the shortcomings of his allegations

in the FAC, Plaintiff expanded his argument in his Opposition

Brief and at the hearing to claim that he is entitled to the

"right to nominate" because that right is not explicitly carved

out under the SMART Constitution's definition of "owner-

members." See Opp. Br. 22-23. The Court is not persuaded by

this last-minute attempt to construe a dispute over a local

union's decision not to allow an employer to sign a CBA as a

claim for equal rights of union members under the LMRDA.

Besides the fact that any "right to nominate"

Plaintiff theoretically could have would be connected to his

membership with Local 104, not Local 293, the SMART Constitution

makes clear that owner-members do not have the rights to vote,

serve in any representative capacity or office, or "attend any

meetings." SMART Const., Art. 16 § 1(d)(2). Broadly

prohibiting owner-members from voting and attending "any meetings" would seem to prevent Plaintiff from nominating candidates as well. Indeed, the SMART Constitution suggests that nominations are generally made at meetings:

> Unless otherwise authorized by the General President all nominations for local union officers, business manager and business representatives shall be made at a regular or special meeting held either in the month of May or early in the month of June and all nominations shall be closed at said regular or special meeting. . . .

SMART Const. Art. 12 § 4.

At the hearing, Plaintiff's counsel argued that the language in Article 12, Section 4 left room for an owner-member to exercise a right to nominate in some circumstances. Counsel relied on the first part of the clause—"Unless otherwise authorized by the General President"—to reason that the SMART Constitution allows for some nominations to be decided outside of meetings, meaning owner-members could sometimes participate. This reading of the SMART Constitution is a stretch. Plaintiff cannot plausibly say—based on a hypothetical situation where the General President <u>might</u> decide to authorize a different nominations procedure—that he is entitled to the "right to nominate," when owner-members are prohibited from attending the meetings at which nominations generally take place.

Regardless, Plaintiff did not plead any facts in the FAC to suggest that he plausibly has a "right to nominate," or any other rights enumerated in the LMRDA, with respect to Local 293. Plaintiff certainly has not alleged any actual deprivation of the right to nominate; for example, an allegation that other owner-members are able to nominate candidates or that the General President has authorized changes in the nominations procedure such to provide owner-members with the opportunity to participate.

Plaintiff urges the Court to find this case comparable to Hughes, see Opp. Br. 20-21, in which the Third Circuit allowed a plaintiff's cause of action under Section 101(a)(1) to survive on the theory that he had satisfied all the requirements for membership and was denied rights under the LMRDA as a result of the union's refusal to accept a transfer of his membership. Hughes, 287 F.2d at 815. But the court was clear that the "right to transfer" itself was not protected by the LMRDA. See id. at 818. Insofar as the plaintiff was entitled to relief under the statute, the court explained that "such relief must be limited to that appropriate to secure to [plaintiff] the equal rights and privileges guaranteed by Section 101(a)(1) and other provisions of the act." Id. at 818.[11/]  In other words, the

---

[11/]  The Court notes that Plaintiff misconstrues the Hughes court's
(Continued . . .)

- 35 -

plaintiff would be entitled to recover only for the deprivation

of one or more of the enumerated rights under Section 101(a)(1),

not the union constitution's right to transfer.  Id.

    At least two critical distinctions between Plaintiff's

claim here and the plaintiff's claim in Hughes are worth

mentioning.  First, the court in Hughes recognized that the

plaintiff had sufficiently alleged that he was a member of the

local union in which he demanded equal rights and privileges.

Hughes, 287 F.2d at 814-815.  Here, on the other hand, Plaintiff

has essentially conceded that he has not been able to satisfy

the Transfer Conditions such to transfer his owner-member status

to Local 293.[12/]  Cf. Sheen, 2012 WL 2360923 at *7 (holding that

the "reasonableness" of requirements in a union constitution and

whether a plaintiff complied with them "are not issues properly

analyzed under section 101(a)(1)").  The second distinction is

the parties' respective membership statuses.  The plaintiff in

Hughes sufficiently alleged that he was a "member" of the

defendant local union, entitled to equal protection of all the

enumerated rights under § 101(a)(1).  Plaintiff here cannot say

the same.  Not only does he lack any member relationship with

_____

statement to mean that "even though the 'right to transfer is not
specifically enumerated' in the LMRDA, a union nonetheless violates the LMRDA
by wrongfully denying a transfer."  Opp. Br. 20 (quoting Hughes, 287 F.2d at
818).  This is not a correct reading of Hughes.

    [12/] Specifically, Plaintiff admits that he has not permanently relocated
to Hawaii, Local 293's jurisdiction, and that he has not been able to present
a signed agreement with BABC and the local union to which he wishes to
transfer.

Local 293; the FAC also fails to allege that Plaintiff has or could have—even if he were an owner-member of Local 293—any of the rights to nominate, vote, attend meetings, and participate in meetings.  The SMART Constitution, which Plaintiff necessarily relies on, makes clear that an owner-member lacks many of the same rights as employee-members.[13/]

Ultimately, the LMRDA does not protect a "right to transfer," and Plaintiff has failed to adequately plead that he is entitled to the right to nominate or any other LMRDA-protected right as alleged against Local 293, much less that any right has been infringed.  The Parish line of cases is not to the contrary.  In Parish, the Ninth Circuit held that the plaintiffs—members in good standing of an international union—

---

[13/]  The Court is also not persuaded by Plaintiff's reliance on In re Puma & Sheet Metal Workers' Intern. Ass'n Local Union No. 137, 862 F. Supp. 1077 (S.D.N.Y. 1994).  In re Puma appears to be the only case analyzing SMART's distinction between members and owner members.  The Southern District of New York held that the plaintiff, an owner-member who alleged he was ousted from the union without due process, had a valid claim under Section 101 of the LMRDA.  Id. at 1081.  Even though the owner-member did not have any of the rights explicitly listed in the Section 101(a)(1), the court pointed to Section 101(a)(5), which specifically prohibited "the disciplining of union members," subject to certain exceptions.  Id. at 1081 n.2.  Given that owner-members were entitled to the right to due process in disciplinary actions because it was not carved out of the SMART Constitution, plaintiff had alleged a right protected by the LMRDA.  Id.

In re Puma is inapposite, as the court there relied on a different sub-section of the LMRDA, which specifically protects the right to due process in disciplinary actions.  Here, the right to transfer is not enumerated anywhere in the LMRDA, and Plaintiff cannot point to any portion of the LMRDA that protects other rights he says have been infringed.  At the hearing, Plaintiff raised for the first time an argument that Local 293's actions constitute a "disciplinary act," creating a cause of action under In re Puma.  This allegation or related legal theory is nowhere to be found in the FAC, and the Court declines to entertain it now.

had a valid claim under Section 101 when they were denied their "right to transfer" to the defendant local union. <u>Parish v. Legion</u>, 450 F.2d 821, 822-23 (9th Cir. 1971). Without further analysis, this "holding" is deceiving. The plaintiffs had alleged that they were improperly denied membership and as a result were not able to vote on questions affecting their employment contracts. <u>Id.</u> at 823.[14/] <u>Parish</u> first held that, under <u>Hughes</u>, "equal rights and privileges are extended to 'anyone who has fulfilled all of the requirements of membership.'" <u>Id.</u> at 824 (quoting <u>Hughes</u>, 287 F.2d at 819) (footnote omitted).

Next, the court held that the union's constitution in <u>Parish</u> entitled members to transfer and did not give discretion to local unions to decide whether to accept a transfer. <u>Id.</u> Thus, the court reasoned that the plaintiffs were entitled to membership via their absolute right to transfer, and "if appellants have complied fully with the provisions of [the constitution], they are entitled to the rights and privileges guaranteed by Section 101(a)(1)." <u>Id.</u> at 827.

---

[14/] The parties cite <u>Ferger v. Local 483 of Intern. Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO</u>, 238 F. Supp. 1016 (D.N.J. 1964) as well, which predates <u>Parish</u> but similarly holds that a denial of a member's absolute right to transfer may violate Section 101(a)(1) if the member is thereby deprived of his or her rights under the LMRDA. Again, Plaintiff here has not alleged that he could have been deprived of any enumerated rights under section 101(a)(1).

Thus, _Parish_ does "not stand for the proposition that the LMRDA itself protects transfer . . . rights." _Ayala_, 2008 WL 1886021 at *10; cf. _Ayala v. Pac. Maritime Ass'n_, No. C08-0119 TEH, 2009 WL 3734070, at *11 (N.D. Cal. Nov. 5, 2009). Rather, it holds that, if an individual is eligible for membership in a local union and the constitution requires that the union accept the transfer, then the individual must "be afforded equal rights and privileges <u>guaranteed by the LMRDA</u>—again, the rights to nominate candidates, to vote in elections, and to attend, deliberate, and vote at membership meetings." _Ayala_, 2008 WL 1886021 at *10. Courts applying _Parish_ have even limited the relief in LMRDA cases to "securing the rights specified in the Act (such as the rights to nominate candidates, to vote in elections, attend membership meetings) and have not ordered an actual transfer of membership." See id. (collecting cases); <u>see also</u> 16 A.L.R. Fed. 927 § 7 (same).

Whether or not the SMART Constitution here gives local unions discretion to accept or reject transfers, the bottom line is that Plaintiff has failed to allege facts to plausibly show that he enjoyed any of the rights protected by the LMRDA to begin with.[15/] Likewise, he has failed to allege any

---

[15/] Because it is not necessary in deciding this Motion, the Court declines to engage in a detailed analysis of the SMART Constitution and whether it gives the local unions discretion to accept or reject a transfer of membership.

discrimination to sustain a valid cause of action under the
LMRDA.  Accordingly, the FAC, as currently formulated, fails to
state a claim upon which relief may be granted.  See Balistreri,
901 F.2d at 699 ("Dismissal can be based on the lack of a
cognizable legal theory or the absence of sufficient facts
alleged under a cognizable legal theory.").  Local 293's Motion
to Dismiss under Rule 12(b)(6) is therefore granted.

## V.  Real Party in Interest and Failure to Join Indispensable Party

Because Plaintiff has failed to state a claim for
which he is entitled to relief, the Court need not decide Local
293's additional arguments.  Nonetheless, the Court will briefly
address those arguments about the proper parties to this action.

### a. Real Party in Interest Under Rule 17

Rule 17 requires that "[a]n action must be prosecuted
in the name of the real party in interest."  Fed. R. Civ. P.
17(1).  Local 293 argues that Plaintiff is not the real party in
interest because it is his business—not he as an individual—that
seeks to enter into a signed CBA with Local 293.  In Local 293's
view, BABC Hawaii is the real party in interest because the FAC
seeks relief in the form of a declaratory judgment that
Plaintiff "is entitled to enter into signed agreement with Local
293 by executing its CBA on behalf of BABC Hawaii."  Mot.
Dismiss. 15 (quoting FAC ¶ 68).

Had this Court held that Plaintiff had a valid claim under Section 101 of the LMRDA, the Court would impliedly have held that Plaintiff sufficiently pleaded his membership rights under LMRDA.  Because Title I of the LMRDA creates a cause of action only for individual members whose equal rights have been infringed, BABC Hawaii could not be the proper party to assert a claim for infringing a member's equal union rights.  The Court otherwise declines to speculate whether Plaintiff's desired remedy, if asserted under a different cause of action, would make BABC Hawaii the real party in interest.

### b. Failure to Join an Indispensable Party Under Rule 19

Defendant Local 293 also contends that SMART, the international union, is an indispensable party and its nonjoinder is fatal to Plaintiff's claim.  Even if Plaintiff had stated a valid claim under the LMRDA against Local 293, the Court concludes that he need not have joined SMART to the action.

Rule 19 addresses whether a party "must be joined" to an action:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> > (B) that person claims an interest
> > relating to the subject of the action and
> > is so situated that disposing of the
> > action in the person's absence may:
>
> > > (i) as a practical matter impair or
> > > impede the person's ability to protect
> > > the interest; or
>
> > > (ii) leave an existing party subject
> > > to a substantial risk of incurring
> > > double, multiple, or otherwise
> > > inconsistent obligations because of
> > > the interest.

Fed. R. Civ. P. 19(1).

Here, the relief Plaintiff seeks—notwithstanding his entitlement to such relief—"can be provided by the local alone without involving the international at all." Ferger v. Local 483 of Intern. Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO, 238 F. Supp. 1016, 1022 (D.N.J. 1964); see gen. Hughes, 287 F.2d 810 (recognizing possibility of valid claim under Section 101 against local even though the international was not joined as a party). Plaintiff has maintained that he is not, in this lawsuit, challenging SMART's interpretation of the SMART Constitution, even as to the Transfer Conditions. At the hearing, Plaintiff explained that his arguments are consistent with SMART's interpretation because he is trying to properly satisfy the Transfer Conditions apparently present in the SMART Constitution. If Plaintiff were using this action to directly challenge SMART's interpretation

of its Constitution or to argue that SMART had infringed Plaintiff's owner-membership rights, perhaps then SMART would have had a material interest in the outcome of this litigation.

In terms of relief, Plaintiff only asks that <u>Local 293</u> sign its own CBA with Plaintiff's LLC, BABC Hawaii. Plaintiff does not seek any remedy that SMART could provide.

Even accepting Plaintiff's argument that his "right to transfer" has been infringed, he is arguing as much only with respect to Local 293. SMART has no interest in the subject matter of this litigation and complete relief could be granted in its absence. <u>Cf.</u> Fed. R. Civ. P. 19(1).[16/]

## VI. Declaratory Relief

Because the Court has held that Plaintiff failed to state a claim under the LMRDA for which relief can be granted, it is implicit that the relief sought by the Plaintiff under the stated cause of action is improper here. The Court declines to address Plaintiff's further arguments regarding declaratory relief, whereby he asks the Court to order a local union to enter into a signed CBA. To the extent such a claim exists,

---

[16/] Defendant's argument that, if SMART is an indispensable party, this action must be dismissed is unpersuasive as well. Even if SMART were a required party under Rule 19, joining him would not impact federal question jurisdiction, which does not require diversity of the parties.

Plaintiff has not properly pleaded it under the appropriate cause of action.[17/]

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss, ECF No. 24, as follows:

1. For lack of subject matter jurisdiction under Rule 12(b)(1), the Motion to Dismiss is DENIED.

2. For failure to state a claim under Rule 12(b)(6), the Motion to Dismiss is GRANTED, with leave to amend.

3. For failure to join an indispensable party under Rule 12(b)(7), the Motion to Dismiss is DENIED.

The claims are dismissed without prejudice. Any amended complaint must be filed within thirty days of the issuance of this Order.

---

[17/] The Court notes, however, that it is not aware of any cases—and Plaintiff's counsel confirmed at the hearing that he too is not aware of any cases—brought under Section 101 of the LMRDA that resulted in a court order to the local union to effectuate or accept a transfer. Likewise, no Section 101 cases have led a court to order a local union to execute a CBA with an employer.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, August 15, 2019.



Alan C. Kay
Sr. United States District Judge

Avila v. sheet Metal Workers Local Union, No. 293, Civ. No. 18-390 ACK-RT,
Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.